```
                        IN THE DISTRICT COURT OF THE UNITED STATES
                              FOR THE DISTRICT OF SOUTH CAROLINA
                                      GREENVILLE DIVISION
```

| | |
|---|---|
| Tyrone Singletary, #237129 ) | |
| ) | Civil Action No.8:09-1257-CMC-BHH |
| Petitioner, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Warden of Kirkland ) | |
| Correctional Institution, ) | |
| ) | |
| Respondent. ) | |

The Petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the court on the Respondent's Motion for Summary Judgment (Dkt. # 11).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on May 8, 2009.[1] On July 24, 2009, the Respondent moved for summary judgment. By order filed July 27, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On August 20, 2009, the Petitioner filed a response opposing summary judgment.

---

[1] This date reflects that the petition was date stamped as received on May 8, 2009, at the Kirkland Correction Institution mailroom. (Pet. Attach. # 3.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## **PROCEDURAL HISTORY**

The Petitioner is currently incarcerated in the Kirkland Correctional Institution. In September 1998, the Petitioner was indicted for two counts of attempted armed robbery, assault and battery with intent to kill ("ABIK"), two counts of possession of a firearm by a convicted felon, two counts of possession of an unlawful pistol, two counts of possession of a firearm during the commission of a violent crime, and murder. On November 11, 1998, the Petitioner pled guilty to murder and ABIK and the remaining charges were dismissed. (App. 3.) The Honorable James E. Brogdon sentenced him to imprisonment for thirty years for the murder and twenty for the ABIK, to run concurrently. (App. 30-31.) The Petitioner did not file a direct appeal.

On August 19, 1999, the Petitioner filed a state post-conviction relief ("PCR") application raising the issue of whether counsel was ineffective for not following up on the investigation and for coercing the Petitioner to plead guilty. (App. 33-37.) Michael Ballenger was appointed to represent the Petitioner. On February 17, 2005, an evidentiary hearing was held before the Honorable John L. Breeden. (App.42-95.) On April 12, 2005, Judge Breeden denied and dismissed the application with prejudice. (App.97-105.) The Petitioner did not file an appeal from the denial of PCR.

On August 24, 2005, the Petitioner filed a second PCR application raising one issue: ineffective assistance of PCR counsel for failing to appeal the denial of his first PCR application. (App. 106-112.) Robert McKissick was appointed to represent the Petitioner. On May 22, 2006, the Honorable Paul M. Burch issued a "Consent Order of Dismissal with Prejudice and Findings Pursuant to *Austin v. State*"[2] in which he dismissed with prejudice the petitioner's second PCR application and found that the Petitioner was entitled to a

---

[2] 409 S.E.2d 395 (S.C. 1991).

belated appeal from the denial of his first PCR application pursuant to *Austin v. State*. (App.150-153.)

On March 17, 2008, Deputy Chief Appellate Defender Wanda H. Carter filed a petition for a writ of certiorari pursuant to *Austin v. State* raising the following issue: "The PCR court properly ruled that petitioner did not voluntarily and intelligently waive his right to appeal his first PCR action." Carter also filed a petition for a writ of certiorari seeking the review of the following issue: The "Petitioner's pleas were given involuntarily because he was misadvised regarding sentencing/parole consequences." On February 23, 2009, the South Carolina Court of Appeals granted the Petitioner a belated review of the denial of his first PCR pursuant to *Austin*, but, after review, denied the petition for a writ of certiorari. On March 11, 2009, the remittitur was sent down.

In this habeas action, the Petitioner raises the following grounds for relief, quoted verbatim:

> **Ground One:** Petitioner's pleas were given involuntarily because he was misadvised regarding sentencing/parole consequences.
>
> **Supporting Facts:** The Petitioner alleges that as to his guilty plea he was misadvised as to sentencing and the consequences which rendered his plea involuntarily. On the date of November 11, 1998 the Petitioner enter into a guilty plea of a negotiated sentences of 30 years for murder, and assault with intent to kill running concurrent which was a agreement and recommendation by the state.
>
> The Petitioner was under the impression as to entry of his plea that he was receiving thirty (30) year sentence that required him to do 85% percent of his sentence in the South Carolina Department of Corrections. As to the Petitioner entry of the S.C. Department of Correction he found out by the state classification caseworker that he would have to serve a flat 30 years sentence day for day which was a mandatory 30 years sentence which was never apart of the agreement. . . .
>
> Therefore Petitioner states that as to his guilty plea he was never made aware by his attorney or the trial courts that he was receiving a mandatory 30 year sentence it was never clear, no

3

> one stipulated mandatory within the record anywhere. The trial judge was under the assumption that I was also required to serve 85% of the 30 year sentence. . .
>
> Clearly, if the trial judge would have read from the S.C. Code of law statutory 16-3-20 he would have understand that anybody that pleads guilty to murder are required to serve 30 years mandatory with no 85% percent requirement.
>
> To the contrary, the prejudice is apparent as the Petitioner must <u>serve</u> more than 85% of his prison time, which lengthens his sentences and he knew not the consequences of his sentence, and he did not withdraw the plea or move to reconsider due to the misadvice and but for the misinformation given would not have pled guilty.

(Pet. 6-8.)

## APPLICABLE LAW

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

4

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams*

5

*v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

## EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement

6

> unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

B. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

8

### C. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

### D. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

9

**DISCUSSION**

In this habeas action, the Petitioner alleges that he was misadvised by his plea counsel and the plea court as to the sentencing and consequences of his guilty plea and thus his plea was rendered involuntary. (Pet'r's Mem. Opp. SUmm. J. Mot. at 6.) Specifically, the Petitioner alleges he was under the impression that he was sentenced to 30 years and he would have to serve only 85% of that time. However, he later learned that he would have to serve the entire 30 years. *Id*. at 7. He alleges that had he known, he would not have pled guilty. *Id.* at 10.

After the plea court judge had accepted the Petitioner's plea of guilty and as he was preparing to sentence the Petitioner, the judge made the following comments: "You're already at 18. Probably at the very earliest, and I'm just guessing, you'll be near 45 before you're released from jail, sir. It's my understanding that you might be required to serve 85 percent of this thirty years." (App. 30.) At the PCR hearing, the Petitioner testified that plea counsel should have objected to the plea court's misstatement, so that the Petitioner would have known that he would have to serve the entire 30 years and he "would have backed out of [his] guilty plea." (App. 61.) The Petitioner stated that plea counsel should have made him aware of his parole ineligibility because that was a consequence of his plea. *Id.* He further testified that plea counsel told him that he would be serving 85% of the 30-year sentence. (App. 76.) Plea counsel testified that it is his general policy not to advise defendants regarding parole eligibility. (App. 79, 86.) He stated he would have told the Petitioner that he would have to understand that he could serve the entire 30 years and he could not tell him if he would get out early. (App. 79.)

The PCR Court noted that plea counsel testified that he does not discuss parole eligibility with defendants. (App. 102.) The PCR Court held that plea counsel was not ineffective in failing to advise the Petitioner on parole eligibility. (App. 102.) Further, the PCR Court found that the Petitioner's assertion that he would not have plead guilty had he

known about his parole eligibility not credible. *Id.* Further, the PCR Court addressed the impact of the plea court's comments regarding parole on the Petitioner's guilty plea. *Id.* The PCR Court found that while this information was incorrect, these comments were made after the plea had been accepted and thus the Petitioner could not show prejudice. (App. 102-03; 104.) Furthermore, the PCR Court also noted that earlier in the plea hearing, plea counsel had stated that the Petitioner had been advised that he could not be promised any parole whatsoever. (App. 103.) The PCR Court concluded that plea counsel was not ineffective and the Petitioner did not suffer any prejudice fro the plea court's comments on parole. (App. 104.)

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson,* 397 U.S. 759, 771 n .14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In the context of a guilty plea, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have plead guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).[3]

The Supreme Court has never held that the United States Constitution requires furnishing a defendant with information about parole eligibility in order for a guilty plea to be deemed voluntary. *Hill*, 474 U.S. at 56. *See Strader v. Garrison,* 611 F.2d 61, 63(4th

---

[3] Where the petitioner has entered a plea of guilty, the voluntariness issue is subsumed within the claim of effectiveness of the attorney's assistance. *Hill v. Lockhart,* 474 U.S. at 56.

11

Cir.1979)("Ordinarily, parole eligibility is . . . an indirect and collateral consequence, of which a defendant need not be specifically advised by the court or counsel before entering a plea of guilty.") However, habeas relief is warranted where a petitioner's mistaken belief about parole eligibility is based upon misinformation by his defense attorney, the prosecutor, or the court, and timing of eligibility was a dispositive issue in the petitioner's acceptance of the plea bargain. *Hill v. Lockhart*, 894 F.2d 1009, 1010 (8th Cir. 1990). Where a petitioner claims his plea was involuntary based upon judicial misstatements, he must show that if the law had been correctly described, he would not have entered the plea.[4]

The undersigned finds that the decision by the state PCR Court was not objectively unreasonable under Section 2254(d)(2), and that the Petitioner cannot rebut the

---

[4] The Petitioner cites state cases in support of his allegations. The Petitioner must show that the state PCR court's decision was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court rather than by the decisions of other courts. In any event, the state cases cited by the Petitioner can be distinguished. The petitioner cites *Pittman v. State*, 524 S.E.2d 623, 624 (S.C. 1999), in which the South Carolina Supreme Court held that when a defendant enters a guilty plea, he must be aware of the nature and crucial elements of the offense, including the maximum and any mandatory minimum penalty. In *Brown v. State*, 412 S.E.2d 399, (S.C.1991), the South Carolina Supreme Court held that when a trial judge misinforms a defendant that he is eligible for parole when in fact he is ineligible for parole, his plea does not represent "a voluntary and intelligent choice among alternative courses of action" available to him. Thereafter, the court modified *Brown,* and concluded that it "still believe[s] that erroneous parole advice from the bench could, on certain facts, mislead a defendant to his detriment; however, it would be wholly impractical to maintain a rule which requires the automatic reversal of a guilty plea without something more." *Hunter v. State,* 447 S.E.2d 203, 205 (S.C. 1994). Finally, in *Frasier v. State*, the court held that the petitioner had failed to establish "something more" than the judge's comment regarding parole at the plea and furthermore the evidence established that the petitioner did not rely on the plea judge's comment concerning parole in pleading guilty. 570 S.E.2d 172 (S.C. 2002). As in *Frasier,* here, the petitioner has failed to establish "something more" that the judge's comments and the evidence establishes that he pled guilty prior to the judge's comments and thus could not have relied upon these comments in deciding to pled guilty. *McAdoo v. Elo*, 365 F.3d 487 (6th Cir. 2004)(holding any misstatement by the judge at sentencing could not possibly have affected [the petitioner's] understanding at the time he entered his plea, the relevant time for our inquiry). Furthermore, the undersigned notes that in *Roscoe v. State*, 546 S.E.2d 417 n. 6 (S.C. 2001), the South Carolina Supreme Court specifically held that "[a]lthough we have consistently held a defendant must have a full understanding of the consequences of his plea and of the charges against him, . . ., the defendant must also demonstrate prejudice to be entitled to relief on PCR."

12

presumption of correctness accorded this finding by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, the PCR Court found the plea counsel had not advised the Petitioner that he was parole eligible. Credibility determinations such as these are factual determinations by the PCR court and as such, they are presumed to be correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1) (2006); *See also Wilson v. Ozmint,* 352 F.3d 847, 858-60 (4th Cir. 2003). Further, as for the plea court's statements, the PCR Court found, the Petitioner did not show any prejudice. The PCR court noted that the record indicates that only after the Petitioner had pled guilty and the negotiated plea had been accepted, did the plea court make any reference as to the Petitioner's parole eligibility. Any misstatement regarding parole that the plea court may have made could not have impacted the Petitioner's decision to plead guilty. Additionally, the undersigned notes that the plea court's statements were hardly definitive on the Petitioner's parole eligibility. The plea court not only stated that he was merely guessing when the Petitioner would be released from jail, but that it was his "understanding" that the Petitioner would have to serve 85%. In conclusion, the undersigned cannot say that the state PCR court's rejection of the Petitioner's claim was contrary to, or an unreasonable application, of clearly established Supreme Court precedent. Accordingly, the Petitioner's claim for relief is without merit.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (Dkt. # 11) be GRANTED; and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

October 28, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).